(91 South. 506)

No. 24598.

FUNK v. NEW ORLEANS RY. & L. CO. et al.

(March 20, 1922. Rehearing Denied May 1, 1922.)

*(Syllabus by Editorial Staff.)*

1. Carriers &#8653;318(5)—Evidence held to show street car passenger thrown from steps by bounce due to emergency stop.

Evidence *held* to show that a street car passenger who was on the steps when the car started did not step from the car while moving, but was carried on the steps almost to the next street, and was then thrown therefrom by the car giving a bounce due to the conductor's signal for an emergency stop.

**2. Carriers ☞298(1)—Act of conductor in signaling for emergency stop while passenger on steps held negligence.**

Where a female passenger, 69 years old and weighing 170 pounds, had not alighted when the car started and was carried nearly to the next street where cars customarily stopped without signal, the act of the conductor in unnecessarily signaling for an emergency stop causing a bounce that threw the passenger from the car was negligence.

**3. Damages ☞132(15)—Judgments for $9,000 for injuries from being thrown from street car held adequate.**

Judgments for $9,000 in favor of a woman 69 years old, who was thrown from a street car, sustaining contusions of the head and both knees and the back, causing severe pain and paralysis of the nerve supply, disabling her from walking or standing, and the injury being permanent, *held* adequate.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by Mrs. Anna Marie Funk, widow of Mathias Funk, against the New Orleans Railway & Light Company and another. From a judgment for plaintiff, defendants appeal. Amended and affirmed.

Dart, Kernan & Dart, of New Orleans, for appellants.

Feitel & Feitel, of New Orleans, for appellee.

By Division B, composed of Justices O'NIELL, LAND, and BAKER.

LAND, J. This is a suit for damages for personal injury. Plaintiff obtained a verdict and judgment in the lower court against defendant companies in solido for the sum of $5,000, and against the defendant railway and light company in the sum of $4,000, with legal interest from date of judgment. The National Surety Company of New York has been made a party to this suit as principal on a bond of $5,000, which was required to be given under an ordinance of the city of New Orleans by defendant railway and light company for each car operated on its lines for the payment of damages to any one injured by any of its cars.

Plaintiff, appellee, has filed an answer to the appeal, and has prayed for amendment of the judgment and an increase of same against the railway and light company from $4,000 to $9,000.

Plaintiff alleges that in the afternoon of March 6, 1919, she was a passenger on an Esplanade car of defendant company, which she boarded on Canal street, and that said car was proceeding on a downtown trip.

Plaintiff alleges that her destination was the corner of St. Anne and Rampart streets, and that, as she approached said corner, she pushed the button as a signal that she wished to alight, and then proceeded to the rear of the car, as it slackened its speed, and that, as the car came to a stop at that corner, she proceeded to get off.

Plaintiff avers that when she was on the step with her left hand on the handle bar, and was proceeding to descend, the car started, and that, fearing that she would be thrown off, she held on to the handle bar of the car with all of her strength, and that the car proceeded with her in this position until about in the middle of the block between St. Anne and Dumaine streets, when her strength gave way, and she was thrown off of the steps of the car with great force onto the neutral ground, and was severely injured and permanently incapacitated either to stand or to walk.

Defendant railway and light company in its answer avers that in the afternoon of March 6, 1919, a passenger in a car of the Esplanade belt line alighted therefrom at Rampart and Dumaine streets, before said car had stopped at its usual stopping place at Dumaine street; and that, if plaintiff was the passenger who alighted, and if she received any injuries, said injuries were due to her own want of care in alighting from a car moving too rapidly for her safely to

make the attempt. The answer of the defendant railway and light company was adopted by its codefendant, the National Surety Company of New York.

[1] The evidence in the case establishes the fact that plaintiff was the passenger on the car in question; but the testimony in the record discloses a state of facts somewhat different from that alleged in the petition.

Plaintiff testified that she boarded the Esplanade Belt car on Canal street, and, when she arrived at St. Peter and Rampart streets, she rang the bell to stop on Orleans and Rampart streets, and that, when the car did not stop there, she again rang the bell, and requested the conductor to put her out at St. Anne street; that the car came to a halt on St. Anne street, and, as she got on the steps, the car moved on; that she kept holding on, and was carried nearly as far as Dumaine street, when the car stopped and gave a bounce, and threw her on her back.

Plaintiff had her left foot on the step and was in the act of taking her right foot from the platform and placing it on the step, when the car started to move at St. Anne street. Plaintiff did not fall while the car was moving from St. Anne to Dumaine street and while she was on the step traversing that distance, but, when the car stopped near Dumaine, it gave a bounce, which threw her from the steps to the ground.

Plaintiff testifies that the car was moving fast between St. Anne and Dumaine streets, while she was on the step.

Defendant company's theory of this case is that, when plaintiff passed her destination at St. Anne and Rampart streets, she became excited; that she went to the rear platform of the car and told the conductor that she wished to get off at St. Anne street; that the conductor told her to wait until they arrived at the next crossing at Dumaine street, but that plaintiff recklessly and deliberately walked off the car while it was moving, and while the front end of the car was about 20 feet from the crossing at Dumaine street, where plaintiff was to alight.

The defense upon its face is highly improbable. The uncontradicted testimony of plaintiff, who is a resident of the city of New Orleans, shows that she is a frequent passenger on the lines of the defendant company, and that she has always exercised due care in boarding and alighting from its cars, and this condition has been necessitated by the fact that she was 69 years old at the time of the accident and weighed 170 pounds.

Plaintiff had arrived at an age when calm judgment naturally supplants indiscretion and impulsiveness. In the case of Buccola v. Shreveport Traction Co., 132 La. 108, 61 South. 130, where an aged passenger was injured, the testimony was conflicting, and a similar defense made as in the present case, we had occasion to observe:

"Indeed, slowness and cautiousness of movement is so natural to extreme old age that impetuosity and recklessness in such a case appears to us almost incredible. * * * This disposition to step off of cars in motion might be believed of a man not in his right mind, or who had never, or perhaps seldom, traveled on street cars and was unacquainted with the proper manner of getting off, and at a loss how to go at it."

This defense is shown to be utterly lacking in reasonableness and probability, by the fact that plaintiff and the witnesses for defendant company all agree that the accident occurred, not near St. Anne and Rampart streets, where plaintiff wished to alight, but nearly a city block from that point, near the crossing of Dumaine street, and with the front of the car only 20 feet from that crossing, as testified to by all of defendant company's witnesses. We are asked to accept as true the testimony of the conductor and of a passenger on the rear platform of the Esplanade Belt car, that the plaintiff, when in such close proximity to the place, where she was to stop, and with the conductor at

her side cautioning her not to alight until she reached the crossing, deliberately walked off of a fast moving car, as if she intended to commit an act of self-destruction. Such testimony failed to convince the jury who tried this case, and who saw and heard the witnesses testify, as well as the trial judge who overruled the motion for a new trial made by defendant company. We are constrained to admit that this testimony, in the light of the circumstances surrounding it, has not favorably impressed this court, and we are therefore compelled to accept plaintiff's version as to how the accident occurred. Her story as told on the witness stand is reasonable, consistent, and bears upon its face the honest impress of truth. Moreover, she is corroborated in many details by the testimony of the witnesses of defendant company and by admissions made in the answer of said company.

It is admitted in the answer in this case that "the car was moving too rapidly for her safely to make the attempt to alight," as it neared Dumaine street. This confirms plaintiff's testimony that the car was moving fast between St. Anne and Dumaine streets, while she was on the step. This admission in the answer also furnishes an excellent reason why plaintiff did not recklessly walk off a rapidly moving car, in the face of a known danger, as testified to by the witnesses of defendant company.

Plaintiff did not fall from the step of the car from any loss of strength by holding on to the handle bar, but she testified repeatedly that she was thrown off by a bounce of the car.

She is corroborated as to the cause of her fall by the testimony of the conductor that he gave an emergency bell, three signals, for the car to stop, and, as it is admitted by defendant company that "the car was moving too rapidly for her safely to make the attempt to alight," this sudden arresting of the speed of the car necessarily created a jolt, which threw plaintiff from her position on the steps to the neutral ground; and the testimony of the conductor that, when the emergency stop was made, the car "stopped very easy; it was going very, very slow"— is not only incredible, under the circumstances, but is a flat contradiction of the admission as to the speed of the car made in defendant company's answer.

[2] Plaintiff had been placed in a situation of danger, by the conductor allowing this car to move on, after the car had stopped at St. Anne street, and after plaintiff had reached the step to alight; but instead of catching hold of plaintiff, while she was on the step clinging to the handle bar, and stopping the car as soon as it commenced to move away from St. Anne street, plaintiff was allowed to remain on the steps unassisted, until the car had almost reached Dumaine street, upon which there is a car track, and where cars stop without signals or bells, when the conductor, without any necessity whatever for doing so, gave the signal for an emergency stop and caused plaintiff to be jerked from her position on the steps to the ground. The car had only 20 feet more to cover before reaching its usual stopping place on Dumaine street and would have stopped there without signal, as required by law.

The conduct of the conductor in thus giving a signal for an emergency stop, without any necessity for same, was not only an act of gross negligence, when the perilous situation of this aged woman is considered, but also it is proof that the conductor in charge of the car on the occasion of the accident was not familiar with the regulations as to stops at intersecting streets where there are railroad crossings. This conductor had been working for defendant company only about three weeks, when the accident occurred. His failure to assist plaintiff at St. Anne street, when the car moved on and while she was on the steps in an attempt to alight, is

also additional proof of the negligence on the part of defendant company in placing a car under the control of an employee as conductor with such limited experience.

The conductor evidently lost his head, when confronted with the dangerous position of plaintiff on the steps of a moving car, and failed to exercise that degree of ordinary care and cool judgment which the situation urgently and clearly demanded.

While the conductor at one place in his testimony testifies that plaintiff deliberately walked off of a moving car and that he tried to hold her with one hand and grabbed the bell with the other hand; yet further on in his testimony, when asked if he tried to stop the lady, when he saw that she was about to get off of the car, he answered: "Yes, sir; I cautioned her."

Plaintiff denies positively that he offered her any assistance, and she is corroborated in her testimony by a witness for defendant company, who was on the rear platform at the time:

"Q. Did you see the conductor grab her while she was on the step, catch her by the sleeve, and hold her? A. No, sir.
"Q. He didn't touch her while she was on the steps? A. No, I never noticed that."

As the testimony shows the presence of no other person on the rear platform of the car except the plaintiff, the conductor, and this witness, there was nothing to obstruct his view, and, if the conductor had taken hold of plaintiff, it is clear that this witness would have noticed it, as he details the conversation between plaintiff and the conductor at the time.

There is much contradiction in the testimony of the witnesses of defendant company. The conductor testified in his direct examination that he had been in the employ of defendant company as conductor for 2 years. On cross-examination, he admitted that he had been a conductor for only 22 days.

In one place in his testimony, he states that, when plaintiff started to get off of the car, he tried to grab her and caught her by the sleeve. In another place, when asked if he tried to stop the lady when she attempted to alight, he stated that he only cautioned her.

In one place he states that in the middle of the block plaintiff got off while the car was going. In another place he states that the front end of the car must have been "20 feet" from the regular stopping place on Dumaine street.

It seems that a Dauphine car was behind the Esplanade Belt car on which plaintiff was a passenger. The motorman on the Dauphine car swears that he saw the plaintiff step off of the Esplanade car while it was in motion, and that, when she stepped off, the Esplanade car was "20 feet" from the front end of the car to the crossing.

The motorman testifies in one place that the Dauphine car was 200 feet behind the Esplanade car at the time of the accident. On cross-examination, however, he admitted that he was crossing St. Anne street, when he saw the accident, and as the front end of the Esplanade car, according to his testimony, was "20 feet" from the Dumaine street crossing when it stopped, the Dauphine car was considerably more than 200 feet behind the Esplanade car, when the accident occurred.

The motorman on the Dauphine car states that he did not see the lady "when she first came out on the back platform," but saw her when she stepped off and fell.

In other words, the plaintiff was "on the step" of the Esplanade car when this motorman first observed her, and, as the emergency stop was made when the Esplanade car was but a short distance from the Dumaine street crossing, this witness merely saw plaintiff when she was thrown from the step by the jar of the emergency stop.

The motorman of the Dauphine car which was behind the Esplanade car testifies that this car stopped with the front end "20 feet" from the Dumaine street crossing, and plaintiff at that time was off the car and on the ground, about 5 or 8 feet from the back end of the car.

Yet the motorman ·of the Esplanade car states that he was 20 feet from the proper stop on Dumaine street when he received from the conductor three bells, the emergency signal; that he stopped right away, opened the gate on the right, got off the car and looked, and saw that they were taking a lady over across the street to take her on the steps. This was unquestionably a case of rapid-fire first aid. This emergency signal was not given after plaintiff had fallen from the steps. The conductor of the Esplanade car testifies as follows:

"Q. At the time you gave the emergency signal, was the lady on or off the car at the time? A. Well, she was on the step about that time."

Even upon this state of facts, as established by the testimony of defendant's own witnesses, the defendant company is guilty of negligence, which 'was the proximate cause of plaintiff's injury.

The conductor of the Esplanade car, conceding that plaintiff made the attempt to alight from the car while it was in motion, had the last clear chance to have prevented her from so doing, by taking plaintiff by the arm and holding her on the steps, as the car was only 20 feet from the Dumaine street crossing, where it stopped on the lower side, without bell or signal, as this was a railroad crossing.

The plaintiff, at the time this emergency signal was given, had almost reached a place of safety, and, if she had been assisted at all, the accident could have been avoided. Instead of doing what any man of ordinary prudence would have done under the circumstances, the conductor negligently and recklessly gave a signal for an emergency stop, when it was wholly unnecessary and clearly dangerous to do so, as he knew that the plaintiff was a lady of advanced age and of heavy weight, and that the effect of an emergency signal would be to cause a sudden jar or jolt, which might precipitate plaintiff from the steps to the ground and cause severe injury.

In the face of the admission in the answer of the defendant company that this "car was moving too rapidly for her safely to make the attempt to alight from same," it is useless to deny that there was any recoil caused by the emergency stop.

Whether we accept the testimony of plaintiff in this case, or whether we rest our conclusions on the testimony of the defendant company, plaintiff, in our opinion, is entitled to judgment. It only remains for us to assess the quantum of damages.

[3] Prior to the accident, plaintiff enjoyed good health, and was active for one of her advanced years. She could walk with ease, and alight from and board cars without assistance. In her fall from the steps of this car, she sustained contusions of the head, both knees, and the back, and has suffered severe pain. After months of medical treatment, she is unable either to walk or to stand, owing to paralysis of the nerve supply to those muscles of the back controlling locomotion and standing. Her injury is of a permanent nature.

While a large discretion is vested in us in determining the amount of damage in personal injury cases, we feel satisfied that the award of the jury in this case fully meets the ends of justice, and an increase of the judgment of the lower court is therefore denied. However, as plaintiff has also prayed in the answer to this appeal that the judgment be amended, so as to allow legal interest from judicial demand, this amendment is allowed, as it conforms to the prayer of plaintiff's petition, and the law so directs.

The judgment appealed from is therefore amended so as to allow interest from judicial demand, and said judgment as amended is affirmed, at the cost of defendant companies.

Rehearing refused by Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.